Okay. Good morning. May it please the Court. I'm Alan Lichtenstein from the ACLU of Nevada with my colleague Lee Roland. We represent the plaintiffs in this case. I'd like to, in advance, reserve about three minutes of my time for rebuttal, if you see what I mean. In terms of the legal issue, it really boils down to, I think, the interpretation of one sentence in the Tinker decision, the sentence where the Court said the problem posed by the present case. For the benefit of the students, why don't you give a brief about a one-minute synopsis of the case, so that they... Lichtenstein Of this case, sure. Roberts Yes. Lichtenstein This particular case challenges the mandatory school uniform policy that was enacted by the defendant in Clark County School District. This mandatory school uniform policy requires that students in schools that have this enacted wear particular colors and only particular colors, and that there not be any writing or messages on attire. We, the plaintiffs, believe that is a gross violation of First Amendment rights, free speech, as well as religious rights because of the nature of the religious exemption, and that it is, in fact, forced speech. Roberts Okay. Lichtenstein The legal issue... Roberts Now to Tinker. Lichtenstein Hmm? Roberts Now to Tinker. Lichtenstein Well, of course, Tinker really is the case that set forth the idea that students do not lose their constitutional protection at the schoolhouse door. And I guess that's really what's at question here. In the Ninth Circuit, there's been a longstanding standard of evaluating expression by students. That's the Chandler case that talks about a three-part, not three-part analysis, but a three-category analysis, that if the student's speech in question has the school word imprimatur on it, it's under Hazelwood. If it is lewd or offensive in that regard, it's Fraser. And all other students' speech expression is governed by Tinker. Since the briefing, there have been several cases that have reiterated the Chandler standard. Pinard, Frederick, Harper v. Poway all say the same thing. Some other jurisdictions look at it differently, particularly the Fifth Circuit. The Fifth Circuit and the position taken by the defendants and by the district court is contrary to the Ninth Circuit case law and focuses on the one sentence that I was about to read. I guess I'll read it now. The problem posed by the present case does not relate to the regulation of length of skirts or the type of clothing to hairstyle or deportment. From that sentence, the Fifth Circuit and the district court have gleaned some kind of fourth category of student expression that somehow this circuit has just sort of missed. If you actually look at those examples, the style of clothing, the length of skirt, the hair length, none of those are inherently expressive. The position taken by the district court and by the defendants is that from that standpoint, anything that is related to attire on a student is necessarily subject to a lower level of constitutional scrutiny than Tinker. Of course, under that particular analysis, the buttons in Chandler, the T-shirt in Harper, and frankly, even the armbands in Tinker would not be subject to Tinker analysis. That is the fundamental question. If under Tinker, this uniform requirement is analyzed under Tinker, then it's clearly unconstitutional. Why? Because there is nothing alleged that there is anything having to do with disruption, which is under Tinker one of the reasons why student expression can be censored. There's nothing to do with impinging on other students, which the recent Harper case talked about, not even something that is inimicable to what the school is teaching in terms of an allegation of illegal activity, which is what the Supreme Court now is going to determine in the Frederick v. Morse case. What we have here are two different cases. In Harper, the Court explicitly said a school cannot ban all messages on T-shirts. The issue in that case was whether a particular message could be banned because of its effect on other students, but the Court was very clear that the idea that a principal can decide to ban messages on T-shirts was not agreed to by this case. The Supreme Court has pulled the plug on that. The Supreme Court has said that Harper's moot Monday of this week. I don't mean to shock you with that, but the Supreme Court. It does. Well, Harper doesn't count anymore, I don't think. And, indeed, that suggests a question that may be applicable here. Is this case moot? And Ms. Jacobs is no longer in school, I take it. Well, Ms. Jacobs still has damages claim. Well, is this case down to the damages claim? Is damages all this case is about now? No. For Ms. Jacobs, it's about damages. For the other students, it is about the regulations. And we have students who are we have, again, it's not part of the record because it happened afterwards. This has been a few years. The Finleys, for example, pulled their child out of school specifically to avoid this particular requirement and would put the child back in school with a uniform requirement not be there. If necessary, if the Court thinks it's important, we can certainly supplement the record or at least update the record with that. With the Dresslers, they still have a child in school who is still subject to the uniform requirement, and so this is clearly an ongoing case. This is a high school, right? This is high school, middle school, elementary school, a variety of different schools, different plaintiffs in different schools. Kim Jacobs herself was in that school. And what happened with Kim Jacobs was, because of this, she felt the need to move out of the district and moved in with her mother. Her parents were divorced and ended up going to school in Winnemucca. So in her case, again, it is about damages. But clearly, for other parents, it is not. Kennedy. Assuming for the sake of argument that Tinker doesn't apply and O'Brien does per the analysis of the district court, where does that leave you in terms of this case? Well, I think as we pointed out in our reply brief, even under O'Brien, it still wouldn't work. First of all, O'Brien deals with things that are not particularly expressive. And so the question, even under O'Brien, is it has to be narrowly tailored. It doesn't have to be the least intrusive. But narrow tailoring means not curbing more speech than is required to obtain the school's substantial purpose. If O'Brien applies, do you think we have enough facts on the record to decide this case, or does this require remand for development of the record further to determine? I think that's the very face under O'Brien, it doesn't apply, simply because in banning all shirts, all messages on clothing in contradiction to Tinker and contradiction to Chandler, the question is, what is the government's purpose? If the government's purpose is conformity and everyone looking alike, I think there's a real serious question as to whether that is substantial enough purpose to trump free speech rights. And if it is to avoid disruption, then clearly it is going beyond what is necessary, getting rid of much more speech than is required for that particular purpose. You also have the issue here of forced speech, a Barnett type of analysis. This is really akin to having students say, I am by my clothing wearing a uniform, I'm part of this community, I'm part of this collective. And again, we've cited several cases that talk about uniforms in that particular context. It can be analogized, I think, to being required to say the Pledge of Allegiance or requiring a student to pray. These may be laudable goals. Patriotism and piety are things that most of us agree are good things. But to require particular expression by students and by parents because we think these are good things, again, flies in the face of the whole line of case law that goes all the way back to the Jehovah's Witnesses in Barnett. That's one of the issues that came about with the failure to give the Dresslers the religious exemption. And it's developed in the record that they saying that they were Northern Baptists did not believe religiously, and violated their religious beliefs, I should say, in having a mandatory uniform. The school district said, well, the kids may wear uniforms in some other context. Therefore, obviously, they're not against uniforms. And the response was, but it's not mandatory. It's a little bit like saying you can't argue about mandatory prayer in school if you go pray someplace else. Sotomayor School district changed the religious exemption requirement, didn't it? Didn't it? No. The court did. The court basically threw it out. So there's a new religious exemption requirement? Under the court's ruling, there was no requirement for religious exemption. It said that it was – it had constitutional problems because of the very fact that we pointed out it involves school administrators talking about or making decisions on the religious or sincerity of religious beliefs, which is wholly inappropriate. And then the district court said, but you don't need to have it anyway. We're just throwing it out, which is interesting because even the cases relied upon by the district court threw it out. But didn't the district revise the religious exemption requirement? Any revision subsequent to the district court's decision was not part of this case, was not briefed, and is not really here. There may be that I don't know about. What we believe is that in order for this to be constitutional, all it requires is a very simple opt-out that anyone with a religious or philosophical belief that uniformers are inappropriate has the right to do so without having to be judged by the school or whatever, very similar to what happens with the Pledge of Allegiance. Anyone who doesn't want to say the Pledge of Allegiance doesn't have to go through a religious test, no one from the school district is required there to say, do you really believe this? Are you really a Jehovah's Witness? What is the nature of your belief? If, in fact, there were an opt-out, if it were not, in fact, mandatory, then schools having their uniforms and their colors and whatever, that's fine. Roberts. You wanted to save some time? Horne. Yes, please. Roberts. You're down to two minutes, a little over two minutes. Horne. In total? Roberts. Yes. Horne. I'll reserve the rest of that. Thank you. Roberts. Thank you for your argument. Counsel, you're from the school district at this time. Hoffman. May it please the Court, my name is Bill Hoffman. I'm the general counsel for the Clark County School District. The school communities in Clark County School District in Las Vegas, Nevada, have taken steps to improve the education that they provide to their students by establishing school uniforms. School uniforms improve student achievement, they promote safety, and they enhance a positive school climate. In fact, 38 of Clark County's 326 schools have established mandatory school uniforms, and the evidence is that those uniforms have contributed to improving student achievement in our schools. The way that the system works is that each school ---- Kennedy. Where is that evidence on the record? Horne. I'm sorry? Kennedy. Where is that evidence on the record? That's a current number. Horne. I'm talking about student achievement. Kennedy. Student achievement is contained in all of the affidavits. I think there are six or seven affidavits that we submitted as part of our motion for summary judgment, and each of those affidavits is written by school administrators with decades of school experience and the experience of having school uniforms in their schools, and they submitted that those important interests of improved safety, improved student achievement, reduced discipline, those sorts of things, those ---- that is the evidence that's before the Court, and there is no evidence to controvert that evidence. Kennedy. In the history adopting the provision, there seemed to be reliance not on that but on other factors, school spirit and conformity. Am I misreading the record? The reason for this rule is, as I described, to improve student achievement. Rather, I can tell you that there is no evidence, and the district court below found, that there was no intent to try to suppress the free expression of students. Rather, the purpose is to improve student achievement. Let me ask you about Tinker and about Chandler. I mean, how do we ignore our own precedent on that? It's a troublesome thing. We struggle with it in Harper v. Poehle. And so maybe there ought to be a different category, but in looking in fairness at our own precedent that controlled, we said there are just the three categories in the Ninth Circuit. So the district court, relying on out-of-circuit authority, created a fourth. How can we ignore our precedent? Well, the Tinker case, first of all, recognizes, really disclaims certain types of conduct that may be expressive. They talk about the wearing of clothes and that sort of thing, the type of clothes, student deportment. The other thing is Tinker did not consider a content-neutral regulation. And that's precisely what the district has passed here. It's content-neutral. And in no case that has been before the Ninth Circuit has that question been looked at. So what the district court did is the district court said, looking at Chandler, we don't think, with all respect to Chandler, we don't think that Chandler considered the possibility of this neutral regulation, neutral on the question of speech. And we looked to Tinker, and it appears that Tinker recognized in when it cited several of its cases, and I can get you those cases. Well, let's assume for the moment that a student in Clark County wore a black armband. Would that be in conformity with the policy? Well, that would clearly be the answer is no. It would clearly be expressive conduct, but it would be that that expressive conduct has to be evaluated in the context that we have. And the context is that that armband would be worn in the face of a regulation that was designed to do something else, to achieve another important interest, which is to improve student achievement. So your position would be that if a student in Clark County wore a black armband in protest of the war, that that would not be constitutionally protected activity? That's right. It would not be. And how can you square that with Tinker, which says, I think, almost precisely the opposite? Because the – in Tinker, Tinker didn't consider the idea that there would be a content-neutral regulation. We think Tinker disclaimed that situation. In other words, Tinker didn't deal with the question of a black armband when you had a student uniform policy in place. You have to look at the context. The standard that you want to use is not unlike, for example, if under Hazelwood, if a student wrote an article that was – school-slash-state-sponsored speech. Sure. We're talking about something different here. You really think that under Tinker, even under Tinker and under Chandler and everything else, that your school district can ban all expressive activity on clothing, including black armbands? Yes. We believe that that would be proper because the context of the case would be different from Tinker. If we apply Tinker, what is the serious disruption at issue in this case? Well, there's no serious disruption. If you apply Tinker, if you don't go to the O'Brien test, then if you apply Tinker, there's no evidence that has been induced that the speech was disruptive. But once again – So are we down to really, in this case, if we apply Tinker, then the regulation cannot survive, and if we apply O'Brien, you think it does? Is that kind of what we're down to? That's right. And O'Brien, we think, was the appropriate way to go because if Tinker disclaimed type of clothing, if that's true, that when Justice Fortas wrote his opinion and he talked about specifically disclaiming some things, then there is room for this fourth category. And the fourth category, then you have to decide, well, what are the rights of interest? And you have the student rights on one hand, certainly, the expressive rights, the free expression rights that the students have. But you also have what we submit is a compelling government interest, and that is to improve education. And O'Brien recognized that. O'Brien, of course, is the draft card burning case. And O'Brien said the intermediate level of scrutiny takes into effect or takes into consideration both the free speech needs and also the need, the important governmental interest that needs to be served. So O'Brien works. And we think that O'Brien is faithful to Tinker. We don't think that it's inconsistent with Chandler. It's not inconsistent with King v. Saddleback, which is a Ninth Circuit case. It talked about hair length. We think that the type of clothes and the hair length are the sorts of expression that were disclaimed out of Tinker. And that provides a room within the Ninth Circuit to allow to make a ruling that's consistent with Tinker and also consistent with Chandler. This policy allows students to wear the crest or logo of the school? It does not. Of the school, yes. It allows them to wear the crest of the school. And some would argue that by requiring them to wear the crest, it's really compelled speech. I'm not sure what the speech is. It doesn't require them to. It allows them to, right? It allows them to. And if they did, then they would be saying, I think nothing more than, I attend this school. And so if that is conduct that's being compelled, then if it's compelled speech, then analyze that under O'Brien. To the extent that it says, I'm a member of the student body, or I go to school at this particular class, I'm not sure what's wrong with that expression. But if you don't like that expression, nevertheless, if you analyze it in the context of O'Brien, then you say that, well, there are important governmental interests for that, for the demonstration of that affiliation with the school. But why is it content-neutral? Shifting away from compelled speech, why is it content-neutral if you're allowing some expression, albeit a statement or logo of the school, and banning others, a logo of another school? Sure. And that's the question is whether or not simply wearing the logo is content-neutral or, rather, that wearing the logo destroys the content neutrality. And we believe that simply being required to indicate that you attend the school, you wear the same clothing as the other. Required. It's allowed. Allowed. Allowed. You allow this, but you don't allow other things. You can't wear a button that says, I support the troops. Right? Right. I'm for Barack Obama. I'm for Mike Huckabee. Can't wear those. That's right. Black armband can't wear a yellow ribbon. Right? Well, I have my own feelings, my own patriotic feelings about that. But I think when you're analyzing this particular issue, the student uniform, what we're trying to do is to be content-neutral so that we don't get into those sorts of problems. The student can wear the logo of the school, but not his father's globe and anchor for having served in the Marine Corps. Right? And having served in the Marine Corps, I'd want them to wear that Viva Globe and Anchor as well. But that's true, that they would not be allowed to do that. Because if we start to encroach on the – But you've already allowed them to encroach with the school logo. Why is this even in the policy? Well, the schools believe that having the students recognize their affiliation with the school is not compelled speech. It doesn't – it's not saying anything. But what you're prohibiting is someone putting on a logo with a little no sign to it. Right? Can't do that.  Now, that issue is not before the Court. No, no, but I think the question is have you opened – are you truly content-neutral? And your argument is logos are neutral, but an anti-logo is not neutral. A logo stands for something. It stands for the spirit. You can't wear the emblem of the Marines. You can't wear a black armband. You can't do no on the school logo. You can't draw a face on the school logo. That's right. You can't. You can't. But once again, what are we trying to express when we require the students to wear – or if we didn't, if the student were allowed to wear the student or the school logo, it would only be just an affirmation by the student that they were part of that student body. It's an expression. Support of the school. I'm sorry? Support of the school. Well, it could be support of the school. Can you tell us – and if you can't do this off the top of your head, that's fine, too. But can you tell us whether any of these plaintiffs currently attend the schools that – whose policies are being complained about? Only Doe 2. Only? Doe 2. The plaintiffs are listed, and there's one plaintiff whose name is Doe, the second Doe plaintiff in the case. And Doe 2 was a – I think was a first grader when the case was started, and he's about a third grader now, still in a school that has the standard student. But now, in that particular student, the district court found that that student had not made any – there's no evidence at all about what that student was trying to say, whether or not there was – The best of your recollection, only Doe 2 currently attends the school – a school having one of these policies that the plaintiffs are complained about. I'm sure of that. Now, you suspect, after what the Supreme Court did, that high school challenges will now all be made by freshmen and challenges to grade schools will all be made by first graders, as these cases do take some time. Do you have anything else at the panel? I wanted to briefly discuss, Your Honor, the issue of the – whether or not the free exercise of religion was violated, and we would submit that the case of Employment Division v. Smith, the United States Supreme Court case, is dispositive on that question. This Court followed Smith with Miller v. Reed, holding that the rational basis test applies in ascertaining when a neutral law of general applicability violates the free exercise of religion. We believe that we fall into that category, and so that resolves that issue. Plaintiffs also wanted to argue, and did argue in their briefs to this Court, that the plaintiff was eligible for a – to make a hybrid claim, but the hybrid claim, we believe, fails because we don't think that there's support to improve the standard of review beyond rational basis because there's no reasonable likelihood that this plaintiff has got a valid free speech claim, nor does he have a valid due process claim. The due process claim really is a very, very quick claim that says that the survey results lack validity. There's no evidence that supports that opinion. And to the contrary, the district submitted information that the district followed the Nevada State law, which requires consultation between the district and parents. That consultation has occurred in the form of a survey. Thank you, Your Honor. Roberts. Thank you for your argument. Counsel, rebuttal? Thank you. I'll try to make this very quick. I've got really three points. One, in terms of dealing with the standing issue, we do have one of the children who wasn't named because it didn't want to be named, who is still in school. We also have parents who are named individually. We have the capable of repetition, yet evading review. And clearly, for example, with the Dresslers, they have not the same child in that it is being repeated. And again, the Finley children were specifically taken out of school until such times they can go back without the uniform. So standing definitely exists, including the damages claim. One of the issues that was raised in terms of, you know, why not O'Brien? Well, O'Brien doesn't apply when you're dealing with the government's interest in suppressing expression. Texas v. Johnson is probably the best example of that, where you could say, well, just burning a cloth is conduct. It has no expression. But when the government's interest is saying no one is going to burn a flag because of its expressive reasons, and they gave all sorts of justifications, the Supreme Court rightly said, that's not O'Brien. That's expression. That's strict scrutiny. O'Brien is for conduct that may have some incidental expressive nature, but the focus is not to limit expression. We have just heard that the purpose is to limit expression, to have conformity for anecdotal evidence that it helps school students or whatever. But clearly, there's no way to uphold this without saying Tinker doesn't exist. The other thing about content neutral or viewpoint neutral as another special category by saying we're not going after any specific message, we're going after all messages on clothing, even if you take away the logo for a moment. And cases such as Buckley, the Board of Airport Commissioners v. Jews for Jesus and Ladue all say when the government takes away an entire forum, that has very severe First Amendment implications. It is not mere conduct. And the fact that it's viewpoint neutral doesn't save it from that kind of constitutional analysis. One final thing, the district court, according to the Fifth Circuit, said there's no problem here in terms of abusal alternative communication. Students can say whatever they want when they're out of school. And clearly, Schneider and a whole bunch of other cases make it very clear that you cannot impinge upon someone's First Amendment rights by saying that they can go someplace else and speak there. So what we've heard here today is very clearly a school policy that is aimed at stifling a medium of communication, passive medium of communication, that is traditional. And when I said earlier that their rule would eviscerate Tinker, I think we've heard that. Thank you. Roberts. Thank both sides for their argument. The case just argued will be submitted for decision.
judges: Hawkins, Thomas, Clifton